UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at LEXINGTON


CIVIL ACTION NO. 09-251-GWU


GREGORY JAY NEWMAN,                                    PLAINTIFF,


VS.                          **MEMORANDUM OPINION**


MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,               DEFENDANT.


**INTRODUCTION**

Gregory Newman brought this action to obtain judicial review of an

unfavorable administrative decision on his applications for Disability Insurance

Income (DIB) and for Supplemental Security Income (SSI).  The case is before the

court on cross-motions for summary judgment.

**APPLICABLE LAW**

The Commissioner is required to follow a five-step sequential evaluation

process in assessing whether a claimant is disabled.

1.    Is the claimant currently engaged in substantial gainful activity?
      If so, the claimant is not disabled and the claim is denied.

2.    If the claimant is not currently engaged in substantial gainful
      activity, does he have any "severe" impairment or combination
      of impairments--i.e., any impairments significantly limiting his
      physical or mental ability to do basic work activities?  If not, a
      finding of non-disability is made and the claim is denied.

1

3.      The third step requires the Commissioner to determine whether the claimant's severe impairment(s) or combination of impairments meets or equals in severity an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the Listing of Impairments).  If so, disability is conclusively presumed and benefits are awarded.

4.      At the fourth step the Commissioner must determine whether the claimant retains the residual functional capacity to perform the physical and mental demands of his past relevant work.  If so, the claimant is not disabled and the claim is denied.  If the plaintiff carries this burden, a prima facie case of disability is established.

5.      If the plaintiff has carried his burden of proof through the first four steps, at the fifth step the burden shifts to the Commissioner to show that the claimant can perform any other substantial gainful activity which exists in the national economy, considering his residual functional capacity, age, education, and past work experience.

20 C.F.R. §§ 404.1520; 416.920; Garner v. Heckler, 745 F.2d 383, 387 (6th Cir.

1984); Walters v. Commissioner of Social Security, 127 F.3d 525, 531 (6th Cir.

1997).

Review of the Commissioner's decision is limited in scope to determining

whether the findings of fact made are supported by substantial evidence.  Jones v.

Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir.

1991).  This "substantial evidence" is "such evidence as a reasonable mind shall

accept as adequate to support a conclusion;" it is based on the record as a whole

and must take into account whatever in the record fairly detracts from its weight.

Garner, 745 F.2d at 387.

2

One of the issues with the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim.  Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982).  This presumes, of course, that the treating physician's opinion is based on objective medical findings.  Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984).  Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary.  Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987).  These have long been well-settled principles within the Circuit.  Jones, 945 F.2d at 1370.

Another issue concerns the effect of proof that an impairment may be remedied by treatment.  The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability.  Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984).  However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations.  Id.  Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups.  Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987).  Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step four refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987).  The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983).  However, both 20 C.F.R. § 416.965(a) and 20 C.F.R. § 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all.  Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case.  Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform,

4

then an award of benefits may, under certain circumstances, be had. <u>E.g.</u>, <u>Faucher v. Secretary of Health and Human Services</u>, 17 F.3d 171 (6th Cir. 1994).  One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities.  20 C.F.R. § 404.1567(b).  "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing.  20 C.F.R. § 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental

contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990).  If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985).  Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments.  Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The Administrative Law Judge (ALJ) concluded that Newman, a 37-year-old former cold end technician with a high school education, suffered from impairments related to degenerative disc disease of the lumbar spine with back pain syndrome, being status post open right tibia/fibula fracture, being status post left femur fracture with open reduction and internal fixation, chronic major depression, and opioid abuse in remission.  (Tr. 22, 29-30).  While the plaintiff was found to be unable to return to his past relevant work, the ALJ determined that he retained the residual

6

functional capacity to perform a restricted range of light level work.  (Tr. 27, 29).
Since the available work was found to constitute a significant number of jobs in the
national economy, the claimant could not be considered totally disabled.  (Tr. 30-
31).  The ALJ based this decision, in large part, upon the testimony of a vocational
expert.  (Tr. 30).

 The court must first determine the time period relevant to this appeal.
Newman alleged he became disabled as of February 1, 2005 as a result of the
residuals of injuries he suffered in a 2003 work-related accident.  (Tr. 42).  However,
the record indicated that he continued to work until December 11, 2006 (Tr. 41),
which the ALJ ultimately concluded would be the appropriate onset date for
consideration.  (Tr. 22).  Thus, the time period for consideration of the plaintiff's DIB
claim runs from this date through the April 24, 2008 date of the ALJ's denial
decision.  The proper inquiry in an application for SSI benefits is whether the plaintiff
was disabled on or after his application filing date.  <u>Casey v. Secretary of Health
and Human Services,</u> 987 F.2d 1230, 1233 (6th Cir. 1993).  Therefore,  the time
period for consideration of the SSI application runs from the January 17, 2007 filing
date through the April 24, 2008 date of the ALJ's denial decision.

 After review of the evidence presented, the undersigned concludes that the
administrative decision is supported by substantial evidence.  Therefore, the court
must grant the defendant's summary judgment motion and deny that of the plaintiff.

The hypothetical question presented to Vocational Expert Linda Taber included an exertional limitation to light level work, restricted from a full range by such non-exertional restrictions as (1) the need for a sit/stand option with no prolonged standing or walking in excess of one hour without interruption; (2) an inability to more than frequently push, pull or use foot controls with the lower extremities; (3) an inability to more than occasionally climb stairs or ramps, stoop, kneel, crouch, or crawl; (4) an inability to ever climb ladders or ropes; and (5) a need to avoid concentrated exposure to full body vibration and exposure to unprotected heights and hazards.  (Tr. 63-64).  With regard to mental status, the ALJ included an ability to at least understand, remember and carry out simple work instructions, sustain concentration and attention for two-hour periods in an eight-hour day, relate adequately to co-workers and supervisors in an object-focused environment with limited public contact, and adapt to routine work changes.  (Tr. 64).  In response, Taber identified a significant number of jobs in the national economy which could still be performed.  (Tr. 64-65).  Therefore, assuming that the vocational factors considered by the expert fairly depicted Newman's condition, then a finding of disabled status, within the meaning of the Social Security Act, is precluded.

With regard to the framing of the physical factors of the hypothetical question, the undersigned finds no error.  Dr. Kip Beard examined Newman in February of 2007.  Dr. Beard noted a history of a healed left femur fracture and

open right tibia and fibula fracture. (Tr. 290). The doctor reported that a May, 2005 MRI scan revealed a left herniated disc at L5-S1 with displacement of the left S1 nerve root. (Id.). Physical examination revealed that the claimant appeared to be comfortable sitting and supine. (Id.). He ambulated with a mild, right-sided limp. (Tr. 292). Neurological examination revealed no evidence of weakness on manual muscle testing. (Id.). Sensation was intact. (Id.). The examiner found no sign of atrophy or weakness in the left knee and left hip, despite a mild loss of motion. (Id.). Dr. Beard opined that objective findings indicated physical limitations with regard to prolonged standing and walking as well as a restricted ability to lift and bend. (Tr. 293). The doctor reported no limitation with regard to hearing, speaking, seeing and handling objects. (Id.). The physical factors of the hypothetical question were essentially consistent with these limitations.

The record was reviewed by Dr. Lina Caldwell in March of 2007 and Dr. Robert Brown in June of 2007. Each reviewer opined that Newman would be able to perform medium level work, restricted from a full range by such non-exertional limitations as an inability to more than occasionally climb ladders, ropes or scaffolds and crouch. (Tr. 327-335, 391-399). The hypothetical factors were compatible with these opinions.

During the time period relevant to this action, Newman sought treatment from Dr. Charles Terry and the staff at St. Joseph Berea. Neither treating source

identified the existence of more severe physical limitations than those presented to the vocational expert.  (Tr. 355-371, 400-425).  Therefore, substantial evidence supports this portion of the administrative decision.

The court notes that the record contains a number of exhibits dated prior to the December 11, 2006 onset date when Newman was found to have actually quit working.  Dr. Thomas Cervoni treated the plaintiff between March and May of 2005 and released him for return to modified work with a need to avoid exposure to heights. (Tr. 251).  Dr. James Bean examined the claimant in August of 2005 and opined he could not return to his previous heavy labor type of work but did not preclude all employment.  (Tr. 253).  Dr. Clifford Kirby treated Newman between May, 2005 and October, 2006 and only reported he could return to work after June 25, 2005.  (Tr. 286).   Thus, the ALJ's findings are consistent with these opinions.

The hypothetical question also fairly depicted Newman's mental condition. Psychologist Jane Brake reviewed the record  in April of 2007.  Brake opined that the plaintiff would be "moderately" limited in maintaining attention and concentration for extended time periods, working in coordination with or proximity to others without being distracted, interacting appropriately with the general public, getting along with co-workers or peers without distracting them or exhibiting behavioral extremes, and responding appropriately to changes in the work setting.  (Tr. 351-352).  The reviewer further indicated that despite these restrictions, the claimant would be able

to understand and remember simple material, concentrate and persist at simple tasks for two-hour segments in an eight-hour day, function in an object-focused setting requiring little public contact and adapt to routine changes.  (Tr. 353). Psychologist Edward Stodola, another reviewer, affirmed these findings in June of 2007.  (Tr. 387-389).  The ALJ's findings were consistent with these opinions.

Dr. Robert Eardley examined Newman in March of 2007.  The plaintiff's appearance and behavior were not remarkable.  (Tr. 325).  The claimant was cooperative but his mood and affect did suggest depressive factors.  (Id.). Newman's speech was relevant and coherent.  (Id.).  The plaintiff's memory was intact and the examiner found no sign of delusions, hallucinations, loosening of associations, or perceptual abnormalities.  (Id.).  Dr. Eardley diagnosed a chronic major depression.  (Tr. 326).  The claimant did not manifest a psychotic situation. (Tr. 325).  The doctor reported that the plaintiff indicated he could not reason or make occupational adjustments due to his condition.  (Tr. 326).  However, Dr. Eardley did not state that his own findings revealed a totally disabling mental condition.  The examiner also reported that the claimant did not make personal or social adjustments but was cooperative.  (Id.).  The doctor did not state that Newman could not make personal and social adjustments.  Thus, Dr. Eardley did not identify more severe mental restrictions than those found by the ALJ.  The examiner's report was reviewed by both Brake and Stodola, neither of whom

thought it revealed a totally disabling condition.  (Tr. 353, 389).  Therefore, Dr. Eardley's report does not support the plaintiff's claim of total disability.

Newman sought treatment for his mental problems at the Bluegrass South Comprehensive Care Center.  In March of 2007, the staff diagnosed a major depressive disorder without psychotic features and opioid abuse in full sustained remission.  (Tr. 296-297).  Margaret Gibson, licensed clinical social worker on the Bluegrass staff, noted extremely severe mental restrictions in January of 2008 with the plaintiff's ability rated as "poor or none" in most areas of functioning.  (Tr. 426-427).  The ALJ noted that under the federal regulations, Gibson would not be an "acceptable medical source" whose opinion would be binding on the administration. (Tr. 29), See 20 C.F.R. § 404.1513.  The ALJ also noted a number of discrepancies in the record which contradicted the severe mental limitations reported by Gibson, including his caring for his young child, playing the guitar, attending church and performing household chores.  (Id.).  Therefore, the ALJ properly rejected Gibson's opinion and substantial evidence also supports this portion of the administrative decision.

The record reveals extensive mental health treatment prior to the December, 2006 onset date.  In April of 2004, Newman was hospitalized at Eastern State Hospital with reports of visual hallucinations and delusions.  (Tr. 213).  A psychotic disorder was diagnosed.  (Tr. 215).  The plaintiff was discharged after moderate

improvement and returned to work.  (Tr. 227).  The claimant was seen at the Ridge Behavioral Health System in April of 2005 with complaints of severe depression. (Tr. 231).  A mood disorder was diagnosed.  (Tr. 234).  This treatment also was obtained well before Newman finally quit working and, so, does not support his disability claim.

Newman argues that the ALJ did not properly evaluate his subjective pain complaints.  Pain complaints are to be evaluated under the standards announced in Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986): there must be evidence of an underlying medical condition and (1) there must be objective medical evidence to confirm the severity of the alleged pain arising from the condition or (2) the objectively determined medical condition must be of a severity which can reasonably be expected to give rise to the alleged pain.

In the present action, Newman was found to be suffering from a potentially painful condition.  However, even if he could be found to have satisfied the first prong of the so-called Duncan test, the claimant does not meet either of the alternative second prongs.  The plaintiff cites a September, 2005 MRI scan of the lumbar spine revealing a herniated disc to the left at L5-S1 displacing the left S1 nerve root as providing objective evidence supporting his complaints of disabling pain.  (Tr. 241).  However, this finding was made over a year and one-half before he quit working.  Dr. Bean was aware of this finding in August of 2005 but only

precluded performance of heavy level work.  (Tr. 252-253).  Dr. Bean noted that evidence of left S1 sciatica was minimal despite left paracentral herniation.  (Tr. 252).  In February of 2007, Dr. Beard was aware of this MRI scan and only imposed modest physical findings with which the hypothetical question was compatible.  (Tr. 290, 293).  As previously noted, neither of the medical reviewers thought that the claimant was totally disabled by his physical problems.  The ALJ noted the medical reports were not consistent with a claim of total physical disability in assessing Newman's credibility.  (Tr. 28-29).  The ALJ also made note of the plaintiff's extensive activities including guitar playing at church, vacuuming, grocery shopping, being the primary care giver to his young son, and using computers as being incompatible with his disability claims.  Under these circumstances, the court finds no error.

The court notes that Newman submitted additional medical evidence directly to the Appeals Council  which was never seen by the ALJ.  This action raises  an issue concerning a remand for the taking of new evidence before the Commissioner.   Cotton v. Sullivan, 2 F.3d 692 (6th Cir. 1993).

A court may order additional evidence be taken before the Commissioner, " . . . but only upon a showing that there is new evidence to be taken which is material and there is good cause for the failure to incorporate such evidence into the record in a prior proceeding . . . ."  42 U.S.C. § 405(g).  The statute provides

that a claimant must prove that the additional evidence is both material and that good cause existed for its not having been submitted at an earlier proceeding. Sizemore v. Secretary of Health and Human Services, 865 F.2d 709, 710 (6th Cir. 1988).   In order to demonstrate "materiality," a claimant must show that a reasonable probability exists that the Commissioner would have reached a different conclusion if originally presented with the new evidence.   Sizemore, 865 F.2d at 711.  Thus, the new evidence must be "material" and "good cause" must be shown why it was not previously submitted.

The medical record with which Newman seeks a remand of the action consists of a report from Dr. Robert Hoskins dated September of 2008 (Tr. 6-10) which was submitted to the Appeals Council.  The plaintiff also attached to his brief an administrative decision finding him disabled as of April 25, 2008 dated August 18, 2009.  Docket Entry No. 11.  Clearly, both records were compiled well after the ALJ's final decision on April 24, 2008.  Dr. Hoskins's opinion, as well as that of psychologist Geraldo Pina, supported Newman's claim of disabled status on the later filed claim for DIB.[1]  The plaintiff asserts that this evidence from a later time period supports his claim of disability on the current claim.

---

[1]The plaintiff cites Pina's opinion as supporting his current disability claim but did not submit this report to either the Appeals Council or the court.

Newman has offered no explanation as to why this or similar evidence was not obtained prior to the ALJ 's decision on the current claim.  While these records were not in existence at the time of this decision, such, by itself, does not satisfy the good cause test and a valid reason for failure to obtain the evidence must still be shown.  Oliver v. Secretary of Health and Human Services, 804 F.2d 964, 966 (6th Cir. 1986).  Furthermore, these records from a later time period do not necessarily "relate back" to the current time frame.  Therefore, the claimant has failed to meet either  the "good cause" or the "materiality" requirements and, so, a remand for the taking of new evidence is not appropriate.

The undersigned concludes that the administrative decision should be affirmed.  Therefore, the court must grant the defendant's summary judgment motion and deny that of the plaintiff.  A separate judgment and order will be entered simultaneously consistent with this opinion.

This the 9th day of June, 2010.

**Signed By:**

**G. Wix Unthank**

**United States Senior Judge**